APPENDIX OF SELECTED CASES

LEXSEE

LEE SLOCUM n1 & another n2 vs. ROBERT F. DONAHUE & another n3; FORD MOTOR COMPANY, third-party defendant.

n1 Individually and as administrator of the estate of Todd Slocum.

n2 Cheryl Slocum.

n3 Dolores J. Donahue.

No. 96-P-100.

APPEALS COURT OF MASSACHUSETTS

*44 Mass. App. Ct. 937; 693 N.E.2d 179; 1998 Mass. App. LEXIS 388*

April 23, 1998, Decided

DISPOSITION: [***1]
    Judgment affirmed.

LexisNexis(R) Headnotes

COUNSEL: Virginia Casey Goscinak for Robert F. Donahue & another.

Michelle I. Schaffer for Ford Motor Company.

OPINION: [*937]

[**180] After Robert Donahue pleaded guilty to motor vehicle homicide in the death of their eighteen month old son, the Slocums filed a civil action against the Donahues alleging [**181] negligence and gross negligence. The Donahues then filed a third-party complaint against Ford Motor Company (Ford), denying negligence and alleging that Ford was negligent and was in breach of warranties of merchantability and fitness for a particular use. The Donahues claim that, when Robert Donahue was in the car prior to the accident, he inadvertently pushed the floor mat on the driver's side, under the throttle. When he later started to back the car down his driveway, the engine began to race and, although he repeatedly stepped on the brakes, his car continued to accelerate. The car's rear wheels hit the curb across the street from his house, became airborne, turned, and then hit a fence. When he got out of the car, he saw Todd Slocum lying on the [***2] lawn. The Donahues' expert would testify at trial that the floor mat was defective, permitting it to interfere with the operation of the vacuum booster which caused the power brakes to fail to function. n4

   n4 Robert Donahue claims that he pleaded guilty in the criminal case because he feared receiving the maximum sentence if he proceeded to trial.

Prior to trial, the Slocums and Ford signed a settlement agreement providing that Ford would pay $ 150,000 to the Slocums in exchange for a release of any claim. Ford then moved for summary judgment as to the Donahues' claims and on the grounds that the settlement was made in good faith and, pursuant to G. L. c. 231B § 4, that all claims for contribution were thereby extinguished, and that there was no basis for the Donahues' claims for indemnity. Ford also moved for a separate and final judgment pursuant to Mass.R.Civ.P. 54(b), *365 Mass. 821, 313 N.E.2d 1974 (1974)*. The Donahues appeal from the final judgment dismissing their third-party complaint against Ford. n5 We affirm. [***3]

Case 1:04-cv-10106-JLT   Document 31-2   Filed 10/20/2004   Page 3 of 15

Page 2

44 Mass. App. Ct. 937, *; 693 N.E.2d 179, **;
1998 Mass. App. LEXIS 388, ***

n5 After the entry of judgment in the third-party action in the lower court, the case of the Slocums against Robert Donahue proceeded to trial. The jury returned a verdict against Donahue.

1. *Right to contribution.* Under *G. L. c. 231B § 4*, as inserted by St. 1962, c. 730, § 1, "When a release . . . is given in good faith to one of two or more persons liable in tort for the same injury: . . . (b) It shall discharge the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor." The Donahues argue on appeal that the settlement between Ford and the Slocums was not made in good faith and was collusive both because the amount of the settlement was for less than the value of the case and because Ford allegedly told the Slocums that Ford would allow them to use its experts so that the Donahues' attempt to attribute liability to Ford at trial would be unsuccessful.

The seminal Massachusetts case construing this statute in this context, *Noyes v. Raymond, 28 Mass. App. Ct. 186,* [***4] *548 N.E.2d 196 (1990)*, controls the instant case in material respects. The issue before the court in *Noyes* was the same as that [*938] before the court here: "whether, on the basis of the limited facts about the settlement which were before the judge in advance of trial, Joseph [Noyes] was entitled to be discharged from all liability for contribution to Raymond." *Id. at 188.* The basis for an exception requiring an extended hearing on the issue of good faith had not been made to appear in *Noyes* and has not been presented here.

As in *Noyes*, there were facts before the judge showing that the settlement between Ford and the Slocums was fair and reasonable. It was reasonably predictable that damages would be high and that a jury would find liability on the part of Robert Donahue, in view of the fact that he pleaded guilty in the criminal case and on the basis of his admission in his deposition that, prior to the accident, he was drinking from a bottle of vodka that he kept under the driver's seat in a brown bag. Given these facts, it was not unreasonable to think that a jury might not find any liability on the part of Ford.

According to the Donahues' attorney, in February [***5] of 1995, counsel for Ford notified the Donahues' attorney that Ford was proposing a settlement offer totaling $ 300,000 with $ 150,000 to be contributed by Ford, $ 125,000 by Liberty Mutual Insurance Company (the policy limits of the Donahues' insurance carrier), and $ 25,000 by the Donahues [**182] personally. n6 The Donahues' attorney responded that she would discuss the matter with her clients, but that $ 25,000 was not an amount that her clients would be financially able to contribute to the settlement. Apparently the subsequent negotiations between the Slocums and Ford occurred without the Donahues' participation. In May, 1995, the Slocums settled with Ford for $ 150,000. *Noyes* instructs that the purpose of the contribution statute is to promote settlement, that a low settlement figure alone is not evidence of "bad faith," and that settlements should be routinely approved without extended hearings if the purpose of the statute is to be served. Further, the court in *Noyes* observed that lack of good faith was evidenced by "collusion, fraud, dishonesty, and other wrongful conduct." *Id. at 190.* In these circumstances Ford's settlement with the Slocums for an amount contemplated [***6] as its contribution to a total settlement package does not indicate bad faith or collusion.

n6 Counsel for the Slocums had earlier indicated to Ford's counsel that they would consider settling this matter with all parties for a total settlement package of $ 400,000.

As to the Donahues' contention that the Slocums' use of experts originally retained by Ford is evidence of collusion, we disagree. n7 In *Commercial Union Ins. Co. v. Ford Motor Co., 640 F.2d 210 (9th Cir.),* cert. denied, *454 U.S. 858, 70 L. Ed. 2d 154, 102 S. Ct. 310 (1981)*, cited by the Donahues, the court found that the settlement was collusive because, to some extent, it was "dictated by the tactical advantage of removing a deep-pocket defendant because of the experts it could produce" and, therefore, "[was] not made in 'good faith' consideration of the relevant liability of all parties." *Id. at 214.* n8 The Donahues' argument suggests that there was bad faith here because the Slocums were not interested in the deep [*939] pocket of Ford, [***7] but settled with Ford because they believed that Ford was not responsible for the death of their son. Such a speculation does not trigger the necessity for a more extensive hearing on the issue of good faith. See *McDermott, Inc. v. AmClyde, 511 U.S. 202, 213 n. 16, 216-217, 128 L. Ed. 2d 148, 114 S. Ct. 1461 (1994)* (while recognizing "the cursory nature of most good-faith hearings," also noted "the large potential for unfairness" in "the pro tanto rule untamed by good-faith hearings"). The motion for summary judgment was properly allowed.

n7 In reaching this conclusion, we have not considered the question whether Ford would "allow" the Slocums to use its experts.

n8 In *Commercial Union*, the United States Court of Appeals for the Ninth Circuit was

Case 1:04-cv-10106-JLT   Document 31-2   Filed 10/20/2004   Page 4 of 15

Page 3

44 Mass. App. Ct. 937, *; 693 N.E.2d 179, **;
1998 Mass. App. LEXIS 388, ***

construing the California contribution statute. This court noted in Noyes that California's law differs from that of Massachusetts because "Massachusetts has not adopted apportionment of codefendants' liability on the basis of their relative degrees of fault." *28 Mass. App. Ct. at 190-191 n. 7.*

[***8]

2. Right to indemnity. "Under G. L. c. 231B, contribution is allowed between joint tort-feasors who cause another, by reason of their wrongdoing, to incur injury or damage. In addition, . . . the statute permits a plaintiff to settle with one joint tort-feasor and still have recourse against remaining tort-feasors (subject to the limitations stated in the statute). The right to contribution, unlike the right to indemnity, is based on the shared fault of the joint tort-feasors. Indemnity, on the other hand, allows someone who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss, including reasonable attorney's fees." *Elias v. Unisys Corp., 410 Mass. 479, 482, 573 N.E.2d 946 (1991).* "Indemnity is permitted only when the would-be indemnitee does not join in the negligent act." *Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 40, 449 N.E.2d 641 (1983),* citing *Afienko v. Harvard Club, 365 Mass. 320, 336, 312 N.E.2d 196 (1974).* "This right to indemnity is limited to those cases in which the would-be indemnitee is held derivatively or vicariously liable for the wrongful [***9] act of another." *Decker v. Black & Decker Mfg. Co., 389 Mass. at 40.*

If the claim against Ford had gone to trial and Ford had been found liable to the Donahues, n9 it would have been as a result of [**183] its negligence or breach of warranty. n10 "Such liability will not be derivative or vicarious in nature, nor will it be constructive rather than actual. Accordingly, the third-party plaintiffs are not entitled to indemnification . . . . *Id. at 41.*

n9 The Slocums never made a direct claim against Ford.

n10 The Supreme Judicial Court in *Wolfe v. Ford Motor Co., 386 Mass. 95, 97-98, 434 N.E.2d 1008 (1982),* determined that a claim for breach of the warranty of merchantability is, in essence, a tort claim to which G. L. c. 231B, § (a), applies.

Once Ford settled with the Slocums, the sole question for the fact finder was whether Todd Slocum's death was caused by defendant Robert Donahue's negligence. n11 Robert Donahue was free to claim that he was not negligent and that Todd Slocum's death was caused [***10] by Ford's negligence in selling a defective product. Under no set of circumstances could the jury properly have held the Donahues liable to the Slocums for the conduct of Ford. Further, in holding Robert Donahue negligent (as they did; see note 5, supra) the jury concluded that he was solely negligent (or was a joint tort-feasor with Ford). His liability is not vicarious and he is not entitled to indemnification from Ford. If Ford had remained in the case, any liability on its part would have been as a joint tort-feasor, and contribution would have been required. Indemnity would not have been appropriate. n12 "Contribution and indemnity are mutually exclusive remedies." *Callahan v. A.J. Welch Equip. Corp., 36 Mass. App. Ct. 608, 613, 634 N.E.2d 134* [*940] *(1994).* Summary judgment on the issue of indemnification was appropriate.

n11 After this appeal was filed and before trial, defendant Dolores Donahue was voluntarily dismissed from the case.

n12 If, as the Donahues claimed, any damages sustained by the Slocums were caused not by the negligence or gross negligence of the Donahues (but, rather, solely as a result of Ford's breach of warranty) this would have constituted an absolute defense to the Slocum's action but would not provide the basis for an indemnity claim. *Decker v. Black & Decker Mfg. Co., 389 Mass. at 41.*

[***11]

3. Separate and final judgment. The Donahues argue that the failure to make explanatory findings is grounds for reversing the entry of separate and final judgment of dismissal. We disagree. Where the reasons for the judge's determination are clear, such findings are not required. *Dattoli v. Hale Hosp., 400 Mass. 175, 176-177, 508 N.E.2d 100 (1987).* In this case, as in Dattoli, "there were no other claims against [Ford], nor was there substantial overlap between the issues to be decided on appeal and those remaining for trial.". There did not appear to be any reason for requiring Ford to wait until final judgment was entered against the Donahues. Indeed, the Donahues do not recite any such reason.

The third-party defendant has requested, in its brief, that attorney's fees and double costs, be awarded on the basis that the appeal is frivolous. That request is denied.

Judgment affirmed.

44 Mass. App. Ct. 937, *; 693 N.E.2d 179, **;
1998 Mass. App. LEXIS 388, ***

Virginia Casey Goscinak for Robert F. Donahue & another.

Michelle I. Schaffer for Ford Motor Company.

LEXSEE 389 MASS. 35

**David H. Decker v. The Black & Decker Manufacturing Company & another; n1 Lenox Machine Company, Inc., third-party defendant**

n1 Pittsfield Supply Company, Inc.

[NO NUMBER IN ORIGINAL]

Supreme Judicial Court of Massachusetts

*389 Mass. 35; 449 N.E.2d 641; 1983 Mass. LEXIS 1416; CCH Prod. Liab. Rep. P9762*

January 5, 1983, Argued
April 29, 1983, Decided

**PRIOR HISTORY:** [***1]

Berkshire.

Civil action commenced in the Superior Court on August 16, 1976.

A motion by the third-party defendant for summary judgment was heard by *Urbano, J.*

The Supreme Judicial Court granted a request for direct appellate review.

**DISPOSITION:**

*Judgment affirmed.*

**LexisNexis(R) Headnotes**

**COUNSEL:**

*David O. Burbank* for The Black and Decker Manufacturing Company & another.

*Philip J. Callan, Jr.*, for Lenox Machine Company, Inc.

**JUDGES:**

Wilkins, Liacos, Nolan, & Lynch, JJ.

**OPINIONBY:**

NOLAN

**OPINION:**

[*36] [**642] The defendants, The Black and Decker Manufacturing Company (Black & Decker) and Pittsfield Supply Company, Inc. (Pittsfield), appeal from summary judgment against them on their third-party complaints for indemnity against Lenox Machine Company, Inc. (Lenox). We affirm.

The plaintiff was injured in the course of his employment for Lenox when a radial arm saw that he was operating "kicked back" a piece of formica that he was cutting and caused his hand to be pulled into the revolving blade. The saw was manufactured by Black & Decker and sold to Lenox by Pittsfield. When Lenox purchased the saw, it was equipped with an "anti-kickback" device designed to prevent material which was being fed through the saw from moving in a direction opposite to its intended path. An employee of Lenox had removed the device prior to the plaintiff's injury, even though the officers of Lenox were aware [***3] that the device was an important safety device. Lenox's employees were instructed with respect to the use of the machine, but they were not informed that a safety device had been removed, nor allowed to use the machine with the safety device.

The plaintiff received double compensation pursuant to the workmen's compensation statute, *G. L. c. 152, § 28*, upon a finding by the Industrial Accident Board of "serious and wilful misconduct of [the] employer." *G. L.*

Case 1:04-cv-10106-JLT   Document 31-2   Filed 10/20/2004   Page 7 of 15

389 Mass. 35, *; 449 N.E.2d 641, **;
1983 Mass. LEXIS 1416, ***; CCH Prod. Liab. Rep. P9762

Page 2

c. 152, § 28, as appearing in St. 1943, c. 529, § 9. The plaintiff did not reserve his common law rights against his employer. *G. L. c. 152, § 24.*

The plaintiff commenced an action against Black & Decker alleging negligent manufacture, negligent failure to warn, and negligent failure to correct defects in the saw. Subsequently, the plaintiff joined [**643] Pittsfield as a party defendant, alleging negligent failure to inspect, negligent failure to warn, and breach of express and implied warranties. See *G. L. c. 106, § § 2-313, 2-314.* Black & Decker and Pittsfield filed a third-party complaint against Lenox, alleging that the plaintiff's injuries were caused by the [*37] negligence of Lenox and that Lenox violated [***4] an implied duty to use the saw in a safe manner. The third-party plaintiffs further alleged that Lenox impliedly agreed to indemnify them for any losses they incurred as a result of the plaintiff's injuries.

Lenox moved to dismiss the third-party complaint for failure to state a claim upon which relief can be granted, *Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974)*, or, in the alternative, for summary judgment, *Mass. R. Civ. P. 56, 365 Mass. 824 (1974).* On reviewing the pleadings and affidavits, a judge of the Superior Court allowed the motion and entered summary judgment for Lenox dismissing the third-party complaint. The judge reasoned that there was no showing of an express or an implied contractual obligation on the part of Lenox to indemnify Black & Decker and Pittsfield. The third-party plaintiffs appealed to the Appeals Court and applied for direct appellate review. We granted their application, and we affirm.

I. *Right to Indemnity.*

In *Liberty Mut. Ins. Co. v. Westerlind, 374 Mass. 524 (1978)*, we indicated that any right of a third-party tortfeasor to recover indemnity from an employer who has paid workmen's compensation benefits to an injured employee, [***5] must stem, if at all, from an express or implied contract of indemnity or from an obligation implied from the relationship of the parties. *Id. at 526-527.* The facts of *Westerlind* did not present an occasion to reach the issue whether such a right of indemnity existed. *Id. at 527.* Therefore, leaving the ultimate question open, we held that the third-party tortfeasor had no right to recover from the employer in that case. *Id.*

In *New Bedford Gas & Edison Light Co. v. Maritime Terminal, Inc., 380 Mass. 734 (1980)*, we held again that, as there was insufficient evidence of an express or implied contract of indemnity, there was no need to reach the question whether a right of indemnity existed. *Id. at 735.* Additionally, we held that there was nothing in the relationship of the parties to imply an obligation to indemnify. *Id. at* [*38] *736.* We noted that "[s]uch a radical departure from the reasonable expectation of the parties, considering their relationship, is unwarranted in the absence of a clear expression in the contract." *Id.*

In *Whittle v. Pagani Bros. Constr. Co., 383 Mass. 796 (1981)*, we followed the majority rule allowing indemnity [***6] against an employer on the basis of an express contract to indemnify. *Id. at 799-800.* We held that the contract between the employer-subcontractor and the third-party general contractor was sufficient to impose an obligation on the employer to indemnify the general contractor. *Id. at 799.*

Turning to the case before us, and assuming without deciding that we would recognize a right to indemnification based on an implied contract to indemnify, we find no implied contract here. The only contract between Black & Decker and Pittsfield, on the one hand, and Lenox, on the other, is an agreement for sale of the radial arm saw. The majority rule is that a sales agreement alone is not a sufficient basis on which to imply a contractual obligation on the part of a buyer to indemnify a seller for damages paid to an injured employee of the buyer. *Steinmetz v. Bradbury Co., 618 F.2d 21, 24-25 (8th Cir. 1980). In re General Dynamics Asbestos Cases, 539 F. Supp. 1106, 1109-1110 (D. Conn. 1982). Bullock v. Black & Decker, Inc., 502 F. Supp. 580, 581-583 (E.D. Mich. 1980). Therrien v. Safeguard Mfg. Co., 180 Conn., 91, 95-96 (1980). Cordier v. Stetson-Ross, [***7] Inc., 184 Mont. 502, 511-513 (1979). William H.* [**644] *Field Co. v. Nuroco Woodwork, Inc., 115 N.H. 632, 634 (1975).* See *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth., 693 F.2d 1, 2-3 (1st Cir. 1982); Cutter v. Massey-Ferguson, Inc., 114 Mich. App. 28, 36 (1982).*

In *Araujo*, the United States Court of Appeals for the First Circuit recently stated that a contractual right to indemnity will be implied only when "there are unique special factors" demonstrating that the parties intended that the putative indemnitor bear the ultimate liability. *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth.,* [*39] *supra at 2,* citing *Roy v. Star Chopper Co., 442 F. Supp. 1010, 1019 (D.R.I. 1977),* aff'd, *584 F.2d 1124 (1st Cir. 1978),* cert. denied, *440 U.S. 916 (1979).* In the view of the Montana Supreme Court, to hold that a purchaser impliedly agrees to use a product in such a manner as to prevent the manufacturer from being exposed to liability "would be stretching the concept of contract out of all relation to reality." *Cordier v. Stetson-Ross, Inc., supra at 512,* quoting 2A A. Larson, Workmen's Compensation [***8] § 76.84, at 14-746 (1982). "No duty flows upstream from the purchaser to the manufacturer. Misuse of the product may be a good defense for the manufacturer, but it does not furnish a basis for indemnity." *William H. Field Co. v. Nuroco*

Case 1:04-cv-10106-JLT   Document 31-2   Filed 10/20/2004   Page 8 of 15

Page 3

389 Mass. 35, *; 449 N.E.2d 641, **;
1983 Mass. LEXIS 1416, ***; CCH Prod. Liab. Rep. P9762

*Woodwork, Inc., supra.* See *In re General Dynamics Asbestos Cases, supra* at *1110*; *Olch v. Pacific Press & Shear Co.,* 19 Wash. App. 89, 94-95 (1978). See generally 2A A. Larson, *supra* at § 76.84. We find these authorities persuasive. We hold, therefore, that a sales agreement, without more, is not a sufficient basis on which to imply a contractual obligation on the part of a buyer to indemnify a manufacturer or seller. n2 Nor do we find any "unique special factors" demonstrating that the parties intended that Lenox bear the ultimate liability. See *Araujo v. Woods Hole, Martha's Vineyard, Nantucket S.S. Auth., supra.*

> n2 Whether we would recognize such an implied contractual obligation, we leave to another day.

Likewise, there is no evidence that [***9] the relationship between Lenox and the third-party plaintiffs is a special relationship carrying with it an obligation to indemnify the third parties. *Liberty Mut. Ins. Co. v. Westerlind,* 374 Mass. 524, 527 (1978). Their relationship is not such a relationship. *White v. Johns-Manville Corp.,* 662 F.2d 243, 248 (4th Cir. 1981) (Virginia law). *SW (Del.), Inc. v. American Consumers Indus.,* 450 A.2d 887, 889-890 (Del. 1982). *Houdaille Indus., Inc. v. Edwards,* 374 So. 2d 490, 494 (Fla. 1979). *Outboard Marine Corp. v. Schupbach,* 93 Nev. 158, 165 (1977). *Arcell v. Ashland Chem. Co.,* 152 N.J. Super. 471, 490 [*40] (1977). *Boldman v. Mt. Hood Chem. Corp.,* 288 Or. 121, 124-129 (1979). *Olch v. Pacific Press & Shear Co., supra* at *93-95*. See Bua, Third Party Practice in Illinois: Express and Implied Indemnity, 25 De Paul L. Rev. 287, 313 (1976); Comment, The Effect of Workers' Compensation Laws on the Right of a Third Party Liable to an Injured Employee to Recover Contribution or Indemnity from the Employer, 9 Seton Hall L. Rev. 238, 246-263 (1978). Nor does such a special relationship arise by virtue of the nature of [***10] the third-party plaintiffs' liability to the injured employee. Black & Decker and Pittsfield argue that they are entitled to indemnification because they did not join in the act of negligence which caused the plaintiff's injury. We reject this argument.

We begin with the proposition that indemnity is permitted only when the would-be indemnitee does not join in the negligent act. *Afienko v. Harvard Club,* 365 Mass. 320, 336 (1974), citing *Stewart v. Roy Bros.,* 358 Mass. 446, 459 (1970). The general rule in Massachusetts is that, "[i]f a party is obliged to defend against the act of another, against whom he has a remedy over, and defends solely and exclusively the act of such other party, and is compelled to defend no misfeasance of his own . . . [and is found liable, such other party] is liable not only for the amount of damages recovered, [**645] but for all reasonable and necessary expenses incurred in such defence." *Westfield v. Mayo,* 122 Mass. 100, 109 (1877). This right to indemnity is limited to those cases in which the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another. *Stewart v. Roy Bros.,* [***11] *supra*. See *Hollywood Barbecue Co. v. Morse,* 314 Mass. 368, 370 (1943) (where one party is liable by inference of law and did not join in negligent act, that party may recover indemnity from party who was negligent); *Gray v. Boston Gas Light Co.,* 114 Mass. 149, 154 (1873) (a party who was liable to plaintiff "by inference of law," and not by reason of personal fault, may recover indemnification from party whose wrongful act thus exposed him to liability); *Lowell v. Boston & Lowell R.R. Corp.,* 23 Pick. 24, 34 [*41] (1839) (a party whose negligence "was rather constructive than actual" may recover indemnification from one whose wrongdoing thus exposed that party to liability); *Garbincius v. Boston Edison Co.,* 621 F.2d 1171, 1175-1176 (1st Cir. 1980). See also J.R. Nolan, Tort Law § 303 (1979).

Such is not the case here. If either Black & Decker or Pittsfield is liable to the plaintiff, it will be as a result of its negligence or breach of warranty. Such liability will not be derivative or vicarious in nature, nor will it be constructive rather than actual. Accordingly, the third-party plaintiffs are not entitled to indemnification from Lenox. [***12] n3 If, as the third-party plaintiffs contend, the plaintiff's injuries were not caused by their negligence or breach of warranty, this will constitute an absolute defense to the main action. Such a defense, however, does not provide the basis for an indemnity claim. *Sherman Concrete Pipe Mach., Inc. v. Gadsden Concrete & Metal Pipe Co.,* 335 So. 2d 125, 127 (Ala. 1976). *Robinson v. International Harvester Co.,* 44 Ill. App. 3d 439, 444-446 (1976), rev'd on other grounds, 70 Ill. 2d 47 (1977). *William H. Field Co. v. Nuroco Woodwork, Inc.,* 115 N.H. 632, 634 (1975).

> n3 That the employer's conduct was wanton or wilful does not alter this result. *Arcell v. Ashland Chem. Co.,* 152 N.J. Super. 471, 495-496 (1977).

As in *Liberty Mut. Ins. Co. v. Westerlind,* 374 Mass. 524, 527 (1978), we base our decision on the statutory scheme embodied in G. L. c. 152. We are aware of the strong criticism of the rule that a third party may recover indemnification from an insured employer only [***13] in limited circumstances. n4 We recognize the policy arguments on both sides [*42] of this "most evenly-

Case 1:04-cv-10106-JLT   Document 31-2   Filed 10/20/2004   Page 9 of 15

389 Mass. 35, *; 449 N.E.2d 641, **;
1983 Mass. LEXIS 1416, ***; CCH Prod. Liab. Rep. P9762

Page 4

balanced controversy." n5 However, we reiterate our conviction that "[s]uch conflicting policy considerations are best resolved in the Legislature where the resolution can be based on full consideration of the competing interests and the ramifications involved with any change of the legislative scheme of G. L. c. 152." *Liberty Mut. Ins. Co. v. Westerlind, supra.* n6

n4 See Locke, Workmen's Compensation Law, 1978 Ann. Survey Mass. Law 82, 99-104; Carpenter, Products Liability -- An Analysis of the Law Concerning Design and Warning Defects in Workplace Products, *33 S.C.L. Rev. 273, 280-292 (1981);* Weisgall, Product Liability in the Workplace: The Effect of Workers' Compensation on the Rights and Liabilities of Third Parties, *1977 Wis. L. Rev. 1035, 1049-1050;* Mitchell, Products Liability, Workmen's Compensation and the Industrial Accident, *14 Duq. L. Rev. 349, 370 (1976).*

n5 2A A. Larson, Workmen's Compensation § 76.11, at 14-561 (1982). See *id.* at §§ 76.90-76.93 (policy arguments); Locke, Workmen's Compensation Law, 1978 Ann. Survey Mass. Law 82, 103-104 (same); Comment, The Effect of Workers' Compensation Laws on the Right of a Third Party Liable to an Injured Employee to Recover Contribution or Indemnity from the Employer, *9 Seton Hall L. Rev. 238, 297-300 (1978)* (same). [***14]

n6 See 3A L. Frumer & M. Friedman, Products Liability § 44.02A[4] (1982) (proposed solutions); Carpenter, *supra* at 293-308 (same); Weisgall, *supra* at 1058-1077 (same).

II. *Constitutionality of the Legislative Abrogation of the Common Law Right to Indemnity.*

Black and Decker and Pittsfield argue that, in so far as *G. L. c. 152, §§ 23 & 24,* set forth [**646] below, n7 abrogate the common law right of indemnity, they are unconstitutional. n8 Specifically, they argue that the exclusivity provisions of *G. L. c. 152, §§ 23 & 24,* bear no rational relation to the legislative purpose of the workmen's compensation statute. Arts. 1, 10, 12 of the Massachusetts Declaration of Rights. [*43] U.S. Const. amend. XIV. Additionally, they argue that, as the statute abrogates a common law cause of action and does not provide a substitute remedy, the statute violates the due process clause of the Fourteenth Amendment to the United States Constitution, the due process provisions embodied in the Massachusetts Constitution, and art. 11 of the Declaration of Rights. We reject both arguments. [***15]

n7 *General Laws c. 152, § 23,* as amended by St. 1953, c. 314, § 6, provides: "If an employee files any claim for, or accepts payment of, compensation on account of personal injury under this chapter, or makes any agreement, or submits to a hearing before a member of the division under section eight, such action shall constitute a release to the insured or self-insurer of all claims or demands at law, if any, arising from the injury."

*General Laws c. 152, § 24,* as amended by St. 1955, c. 174, § 5, provides in pertinent part: "An employee shall be held to have waived his right of action at common law . . . to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right . . . ."

n8 We note that this issue was not raised below. Although we need not treat it, "because the question presented has application to other persons in the Commonwealth and the result we reach is not changed by our consideration of the point, we shall state our views on the issue." *Royal Indem. Co. v. Blakely, 372 Mass. 86, 88 (1977).*

[***16]

A. *Abrogation of the common law right.*

1. *Due process.* At the outset, we note that "[e]very rational presumption is indulged in favor of the validity of an act of the General Court. Enforcement of such legislative enactment will not be refused unless its conflict with some provision of the Constitution is established beyond reasonable doubt." *American Mfrs. Mut. Ins. Co. v. Commissioner of Ins., 374 Mass. 181, 190 (1978),* quoting *Campbell v. Boston, 290 Mass. 427, 429 (1935).* "Unless the act of the Legislature cannot be supported upon any rational basis of fact that reasonably can be conceived to sustain it, the court has no power to strike it down as violative of the Constitution." *Sperry & Hutchinson Co. v. Director of the Div. on the Necessaries of Life, 307 Mass. 408, 418 (1940). Klein v. Catalano, 386 Mass. 701, 707 (1982).* It is not a matter for the courts to decide whether a particular statute is wise or is sound policy. *Commonwealth v. Lammi, 386 Mass. 299, 300 (1982).*

Case 1:04-cv-10106-JLT   Document 31-2   Filed 10/20/2004   Page 10 of 15

389 Mass. 35, *; 449 N.E.2d 641, **;
1983 Mass. LEXIS 1416, ***; CCH Prod. Liab. Rep. P9762

Page 5

The test under the due process clause of the Federal Constitution is "whether the statute bears a reasonable relation to a permissible legislative objective." [***17] *Pinnick v. Cleary*, 360 Mass. 1, 14 (1971). Under the State Constitution the issue is whether the statute "bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare." *Blue Hills Cemetery, Inc. v. Board of Registration in Embalming & Funeral Directing*, 379 Mass. 368, 373 (1979), quoting *Sperry & Hutchinson Co. v. Director of the Div. on the Necessaries of Life, supra*.

We have no doubt that G. L. c. 152, §§ 23 & 24, bear a reasonable and substantial relation to a permissible legislative objective -- the general public welfare. See *Sperry &* [*44] *Hutchinson Co., supra; Pinnick v. Cleary, supra at 14*. The purpose of these sections, which have always been a part of the workmen's compensation law, is to provide a benefit to the insured employer by releasing it from liability in return for imposing a statutory liability without regard to fault. See *West's Case*, 313 Mass. 146, 153-154 (1943). The statute is not irrational; it does not offend any concept of due process.

[**647] 2. *Article 11*. Although art. 11 of the Declaration of Rights n9 guarantees "a certain remedy . . . for [***18] all injuries . . . which [one] may receive," this provision has never been construed to grant to any person "a vested interest in any rule of law entitling [such person] to insist that it shall remain unchanged for his benefit," *New York Cent. R.R. v. White*, 243 U.S. 188, 198 (1917). *Pinnick v. Cleary, supra at 11-12*. As we said in *Pinnick*, "[C]hanges in prior law are necessary in any ordered society, and to argue that art. 11 prohibits alterations of common law rights as such, especially in the face of the specific provision to the contrary in art. 6, n[10] flies in the face of all reason and precedent." *Id. at 12*. To uphold the third-party plaintiffs' argument would be tantamount to placing "certain rules of the 'common law' . . . above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law." *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 281 [*45] *(1978)*, quoted with approbation in *Klein v. Catalano*, 386 Mass. 701, 713 (1982).

n9 Article 11 provides: "Every subject of the Commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely, and without being obliged to purchase it; compleatly, and without any denial; promptly, and without delay; conformably to the laws." [***19]

n10 Part II, c. 6, art. 6, of the Massachusetts Constitution provides: "All the laws which have heretofore been adopted, used and approved in the Province, Colony or State of Massachusetts Bay, and usually practiced on in the courts of law, shall still remain and be in full force, until altered or repealed by the Legislature; such parts only excepted as are repugnant to the rights and liberties contained in this Constitution."

The parties have not called our attention to any Massachusetts case (nor has our research revealed any) addressed to the question whether art. 11 is offended by the exclusive remedy provisions of the workmen's compensation law. However, our research has disclosed that five jurisdictions which have State constitutional provisions similar, or virtually identical, to our art. 11, have addressed this issue. Four of the five jurisdictions have held that legislative abrogation of the right to indemnity in the workmen's compensation context does not offend the constitutional principles embodied in their "art. 11." See *Stauffer Chem. Co. v. McIntyre Elec. Serv.*, 401 So. [***20] 2d 745 (Ala. 1981); *Linsin v. Citizens Elec. Co.*, 622 S.W.2d 277, 281 (Mo. App. 1981); *Grove Mfg. Co. v. Cardinal Constr. Co.*, 534 S.W.2d 153, 155-156 (Tex. Civ. App. 1976); *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 190 (1980). Contra *Sunspan Eng'g & Constr. Co. v. Spring-Lock Scaffolding Co.*, 310 So. 2d 4, 6-8 (Fla. 1975). We agree with the majority rule. Therefore, we conclude that the legislative abrogation of the common law right of indemnity does not offend art. 11.

B. *Failure to provide alternative remedy.*

1. *Due process*. In *Klein v. Catalano*, 386 Mass. 701, 712 n. 16 (1982), we held that the Legislature may abolish a common law cause of action without providing a substitute remedy if the abolition is rationally related to a permissible legislative objective. While we are aware of the criticism of the rule prohibiting the right to indemnity in circumstances such as in the instant case, and the myriad alternative remedies suggested by commentators, n11 we cannot say that the Legislature's failure to provide such an alternative remedy was irrational.

n11 See notes 4-6, *supra*.

389 Mass. 35, *; 449 N.E.2d 641, **;
1983 Mass. LEXIS 1416, ***; CCH Prod. Liab. Rep. P9762

[***21]

2. *Article 11*. As we noted above, art. 11 does not preclude the Legislature from abolishing a cause of action. *Pinnick* [*46] *v. Cleary, 360 Mass. 1, 11-12 (1971)*. Likewise, we do not read art. 11 as compelling the Legislature to provide a substitute remedy each time that it decides to [**648] abrogate a common law right.

See *Klein v. Catalano, supra at 711-713 & n. 15*, and cases cited.

*Conclusion.* The third-party plaintiffs, Black & Decker and Pittsfield, may not recover indemnity in the case before us. Additionally, the exclusivity provisions embodied in *G. L. c. 152, § § 23 & 24*, are not unconstitutional.

*Judgment affirmed.*

LEXSEE

Karyn Chapman, As Administratrix of the Estate of Ashton Chapman, Plaintiff, v. Bernard's Inc., and Mattress Discounters, Defendants.

Civil Action No. 97-40127-NMG

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

198 F.R.D. 575; 2001 U.S. Dist. LEXIS 4470

January 3, 2001, Decided

**DISPOSITION:** [**1] Motion of defendant, Mattress Discounters, for dismissal of the complaint (Docket No. 35) ALLOWED, with prejudice; Motion of defendant, Mattress Discounters, for separate entry of judgment (Docket No. 34) DENIED; and plaintiff's motion in support of the motion of defendant, Mattress Discounters, for separate entry of judgment (Docket No. 37) DENIED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For KARYN CHAPMAN, Plaintiff: Douglas K. Sheff, The Sheff Law Offices, Andrew M. Abraham, The Sheff Law Office, Boston, MA.

For BERNARD'S INC., Defendant: Jack R. Pirozzolo, Christopher R. Goddu, Willcox, Pirozzolo & McCarthy, Boston, MA.

For MATTRESS DISCOUNTERS, INC., Defendant: Craig D. Murphy, Law Office of Donna Gully-Brown, Worcester, MA.

For LEO R. LAFLAMME, JR., interested party: Richard M. Welsh, Scannell and Salerno, Worcester, MA.

For BERNARD'S INC., Cross-Claimant: Jack R. Pirozzolo, Willcox, Pirozzolo & McCarthy, Christopher R. Goddu, Nixon Peabody, Boston, MA USA.

**JUDGES:** Nathaniel M. Gorton, United States District Judge.

**OPINIONBY:** Nathaniel M. Gorton

**OPINION:** [*576]

**MEMORANDUM AND ORDER**

**GORTON, J.**

Plaintiff, Karyn Chapman ("Chapman"), filed the instant action as administratrix of the estate of her son, Ashton [**2] Chapman, against defendants Bernard's Inc. ("Bernard's") and Mattress Discounters. Pending before this Court are motions by Mattress Discounters for 1) dismissal of the complaint pursuant to Fed.R.Civ.P. 41(b) (Docket No. 35), and 2) separate entry of judgment pursuant to Fed.R.Civ.P. 54(b) (Docket No. 34). Chapman has filed a motion "in support of Mattress Discounters' motion for separate entry of judgment" (Docket No. 37).

**I. Background**

Bernard's manufactures daybeds and distributes them in Massachusetts through Mattress Discounters. Chapman alleges that on March 24, 1994, her infant son was killed when he became wedged between the mattress and tubular metal spindles of the foot rail on a daybed manufactured by Bernard's, which she had purchased through Mattress Discounters. Chapman's complaint includes claims for 1) negligence, 2) breach of warranty, 3) breach of the implied warranty of merchantability, 4) breach of the implied warranty of fitness for a particular purpose, 5) wrongful death, and 6) conscious pain and suffering. Bernard's denies liability and has cross-claimed against Mattress Discounters for contribution and/or indemnification.

Case 1:04-cv-10106-JLT   Document 31-2   Filed 10/20/2004   Page 13 of 15

198 F.R.D. 575, *; 2001 U.S. Dist. LEXIS 4470, **

Page 2

Chapman states that [**3] since the beginning of 1999, she attempted to engage both defendants in settlement negotiations, but that Bernard's was unwilling to negotiate. Mattress Discounters, on the other hand, did [*577] negotiate. The two parties entered into mediation in September, 2000, and on November 27, Chapman released Mattress Discounters and its insurer, Travelers Insurance Company ("Travelers"), from her claims for the sum of $ 400,000 pursuant to a Settlement Agreement and Release ("the Settlement Agreement"). Chapman claims that, after the mediation, Travelers and counsel for Mattress Discounters contacted Jack R. Pirozzolo ("Pirozzolo"), counsel for Bernard's, regarding possible settlement, but that Bernard's again indicated that it had no interest in settling.

Pirozzolo tells a different story. On October 30, 2000, he received a letter from counsel for Mattress Discounters inquiring whether Bernard's would settle. Pirozzolo notes that the letter failed to mention the then ongoing mediation. On October 31, 2000, following the mediation, but prior to the settlement, counsel for Mattress Discounters informed Pirozzolo that Chapman's counsel and Travelers' adjuster (but presumably not Mattress Discounters) [**4] were involved in settlement negotiations. Pirozzolo replied that he would prefer to postpone settlement negotiations until Bernard's filed its motion for summary judgment. Based upon those communications, Pirozzolo reports that Bernard's expected mediation between all parties to the instant action to occur following discovery.

After settlement, counsel for Chapman advised Pirozzolo of its fruition. Pirozzolo then allegedly contacted counsel for Mattress Discounters who reluctantly confirmed the same because, according to Pirozzolo, counsel for Chapman had asked Mattress Discounters to keep the mediation a secret.

## II. Motion for Dismissal and Separate Entry of Judgment

Mattress Discounters argues that because Chapman has settled her claims against it, those claims should be dismissed pursuant to *Fed.R.Civ.P. 41(b)* and a separate judgment of dismissal entered under *Fed.R.Civ.P. 54(b)*.

### A. Effect of Dismissal on Bernard's Cross-Claim

Bernard's cross-claim seeks contribution and/or indemnification from Mattress Discounters. Bernard's opposes the motion for dismissal primarily out of fear that dismissal of Chapman's claims against Mattress Discounters will extinguish [**5] Bernard's cross-claim. This Court separately addresses Bernard's concern with respect to its cross-claims for contribution and indemnification.

### 1. Contribution

The Massachusetts statute dealing with contribution among joint tortfeasors provides, in pertinent part:

> When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury:
>
> (a) It shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of consideration paid for it, whichever is the greater; and
>
> (b) It shall discharge the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

M.G.L. c. 231B, § 4 (emphasis added). Therefore, if the settlement between Chapman and Mattress Discounters was entered into in "good faith", it effectively discharges Mattress Discounters from Bernard's cross-claim for contribution. *Sullivan v. Bankhead Enter., Inc., 108 F.R.D. 378, 381 (D.Mass. 1985)*. [**6] This rule, which is intended to encourage settlement, represents the realization that a joint tortfeasor will be unlikely to settle if he remains open to contribution claims. *Id. at 380-81*.

To determine whether Mattress Discounters is discharged from liability on Bernard's cross-claim, this Court must first determine whether the Settlement Agreement was entered into in good faith. The statute does not define good faith, but Massachusetts courts have stated that a lack of good faith under § 4 "includes collusion, fraud, dishonesty, and other wrongful conduct". *Noyes v. Raymond, 28 Mass. App. Ct. 186, 190, 548 N.E.2d 196 (1990)*; see also *Slocum v. Donahue, 44 Mass. App. Ct. 937, 938, 693 N.E.2d 179 (1998)*(quoting Noyes). [*578] The amount of a settlement has no bearing on the good faith question. *Noyes, 28 Mass. App. Ct. at 190*.

The party seeking discharge has the initial burden of establishing good faith. *Id. at 191*. That burden is satisfied by showing that a settlement has been agreed upon and by describing its nature and terms. Id. The burden of production and persuasion then shifts to the nonsettling [**7] party. If the nonsettling party raises a legitimate issue of lack of good faith, it is entitled to an evidentiary hearing thereon, but in keeping with the goal of encouraging settlement, extended hearings on good faith should be the exception. *Id. at 189-91*. The case

Case 1:04-cv-10106-JLT    Document 31-2    Filed 10/20/2004    Page 14 of 15

198 F.R.D. 575, *; 2001 U.S. Dist. LEXIS 4470, **

Page 3

law indicates that it is difficult to prove a lack of good faith. *Id. at 191* (no inference of collusion and thus lack of good faith arose from fact that plaintiff and defendant were husband and wife); *Slocum, 44 Mass. App. Ct. at 938* (no lack of good faith simply because settlement negotiations proceeded without nonsettling defendants after they had rejected an initial settlement offer).

Bernard's contends that the failure of Chapman and Mattress Discounters to include it in, or even inform it about, the settlement negotiations constitutes a lack of good faith. Furthermore, Bernard's claims that such failure violated Local Rule 16.4(B) which provides that "whenever a settlement conference is held, a representative of each party who has settlement authority shall attend or be available by telephone" and subsection 16.4(C)(4)(c) of the same rule which requires, in the event [**8] of judicially-granted mediation, that a mediator meet with "each party".

As an initial matter, Mattress Discounters has satisfied its burden by providing a copy of the Settlement Agreement and stating, with support from Chapman, that it was made in good faith. Bernard's, in contrast, has not satisfied its burden of production and persuasion and therefore the contribution claim against Mattress Discounters is discharged pursuant to M.G.L. c. 231B, § 4. This Court concludes that Bernard's was aware of pending settlement negotiations involving its co-defendant, Mattress Discounters, because it admits knowing that Chapman and an adjuster for Travelers (Mattress Discounters' insurer) were engaged in mediation. Furthermore, Bernard's rejected an initial invitation by Chapman to settle and cannot now complain that settlement negotiations then proceeded without its participation. *Slocum, 44 Mass. App. Ct. at 938.*

Moreover, neither Mattress Discounters nor Chapman violated Local Rule 16.4. Subsections (B) and (C)(4)(c) of that rule apply only to judicially-granted mediation. Although, in its Scheduling Order, entered March 16, 1998, this Court encouraged the parties to mediate, [**9] they never requested the appointment of a mediator or court involvement in the mediation process. Furthermore, Rule 16.4 simply does not require one tortfeasor to include the other in its settlement negotiations.

2. Indemnification

The right to contribution flows from the shared fault of joint tortfeasors. *Slocum, 44 Mass. App. Ct. at 939.* Indemnity, on the other hand, allows one who is without fault but is legally compelled to defend against the wrongful act of another, to recover the entire amount of that loss from the wrongdoer. Id. "Indemnity is permitted only when the would-be indemnitee does not join in the negligent act." *Decker v. Black & Decker Mfg. Co., 389 Mass. 35, 40, 449 N.E.2d 641 (1983).* "This right to indemnity is limited to those cases in which the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another." Id.

Discharge of liability for contribution under M.G.L. c. 231B, § 4 does not extinguish any right to indemnity. M.G.L. c. 231B, § 1(e). Nevertheless, Bernard's does not have a valid indemnity claim because it could not be held "derivatively or vicariously liable" for the any [**10] wrongful act of Mattress Discounters. The Slocum case is instructive. In that case, the parents of a minor killed when he was struck by an automobile, sued the driver and his wife who, in turn, asserted a third-party claim against the automobile manufacturer, Ford Motor Co. ("Ford"). Ford subsequently settled with the plaintiffs [*579] and moved for summary judgment on the third-party claim. *Slocum, 44 Mass. App. Ct. at 937.* The motion was granted on the grounds that the driver was not entitled to indemnification from Ford because he could not be held vicariously liable to the plaintiffs for Ford's conduct under any circumstances. *Id. at 939.* The court also noted that, even if the plaintiffs had not settled with Ford, it could only have been found liable to the driver as a result of its negligence or breach of warranty. In either case, indemnity was not an appropriate remedy. Id.

The instant case is analogous to Slocum. Bernard's is not an agent of Mattress Discounters, nor does it have a relationship with that co-defendant from which it could be held vicariously or derivatively liable for the actions of Mattress Discounters. Accordingly, Bernard's [**11] is not entitled to indemnification from Mattress Discounters under any circumstances.

B. Standard for Dismissal

Mattress Discounters seeks dismissal of Chapman's complaint under *Fed.R.Civ.P. 41(b)* which provides in pertinent part:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant.

Chapman has neither failed to prosecute (i.e. engaged in delay tactics) nor failed to comply with the rules of civil procedure or any order of this Court. Accordingly, Bernard's motion will be treated as a motion under Rule 41(a)(2). That rule provides, in pertinent part:

> An action shall not be dismissed at the plaintiff's instance save upon order of the

Case 1:04-cv-10106-JLT   Document 31-2   Filed 10/20/2004   Page 15 of 15

198 F.R.D. 575, *; 2001 U.S. Dist. LEXIS 4470, **

Page 4

court and upon such terms and conditions as the court deems proper... Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

The purpose of Rule 41(a)(2) is to permit the plaintiff, with court approval, to dismiss an action voluntarily as long as no other party will suffer prejudice thereby. *Doe v. Urohealth Systems, Inc., 216 F.3d 157, 160 (1st Cir. 2000).* [**12] The district court is responsible for ensuring that such prejudice will not occur. Id. A court may dismiss an action as to fewer than all of the defendants because the word "action" in Rule 41(a)(2) has been construed to mean all claims against any one defendant. *Sullivan, 108 F.R.D. at 382.*

Mattress Discounters urges dismissal of Chapman's claims in light of the Settlement Agreement. n1 Although Rule 41(a)(2) speaks only in terms of a plaintiff's motion for dismissal, the rule has been applied to a defendant's motion as well. *Sullivan, 108 F.R.D. at 382.* Dismissal of Chapman's claims against Mattress Discounters will not prejudice Bernard's. The Settlement Agreement discharged Mattress Discounters from liability on the cross-claim for contribution and Bernard's is not entitled to indemnification from Mattress Discounters as a matter of law. There is thus no need for Mattress Discounters to remain a party to the action. Dismissal under Rule 41(a)(2) is appropriate.

n1 Although Chapman's motion in support of Mattress Discounters seeks only a separate entry of judgment pursuant to *Fed.R.Civ.P. 54(b)*, by implication it concurs in the dismissal of the action against that defendant.

[**13]

### C. Standard for Separate Entry of Judgment

Rule 54(b) provides, in pertinent part:

When more than one claim for relief is presented in an action...or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

The purpose of this rule is

to allow an immediate appeal from that judgment in situations where, otherwise, a party would have to await a final judgment adjudicating all claims between all the parties in an action, and, because of such delay and the inability to appeal, the party would suffer a hardship.

*Sullivan, 108 F.R.D. at 381.* Rule 54(b) requests are not to be granted routinely. Curtiss-Wright [*580] *Corp. v. General Electric Co., 446 U.S. 1, 10, 64 L. Ed. 2d 1, 100 S. Ct. 1460 (1980).*

Mattress Discounters has not demonstrated that it will suffer any hardship if a separate judgment is not entered on its behalf. Furthermore, it has no reason to appeal because Chapman has released it from [**14] liability in the instant suit. *Sullivan, 108 F.R.D. at 381* (settlement of claims against a party negates any need that party might have for an appeal, "much less an immediate one"). Accordingly, separate entry of judgment under *Fed.R.Civ.P. 54(b)* is inappropriate.

### ORDER

For the reasons set forth in the Memorandum above:

1) the motion of defendant, Mattress Discounters, for dismissal of the complaint (Docket No. 35) is ALLOWED, with prejudice;

2) the motion of defendant, Mattress Discounters, for separate entry of judgment (Docket No. 34) is DENIED; and

3) plaintiff's motion in support of the motion of defendant, Mattress Discounters, for separate entry of judgment (Docket No. 37) is DENIED.

So ordered.

Nathaniel M. Gorton

United States District Judge

Dated: January 3, 2001