UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

```
*************************
ZHANNA CHIZHIK,              *
Administratrix of the Estate *
of Grigory Chizhik,          *     C.A. NO.:   04-10106 JLT
        Plaintiff            *
                             *
v.                           *
                             *
SEA HUNT, INC., TROPICLAND   *
MARINE AND TACKLE, INC., and *
GREGORY ZILBERMAN,           *
        Defendants           *
*************************
```

**PLAINTIFF'S OPPOSITION TO**
**SEA HUNT, INC.'S SUMMARY JUDGMENT MOTION**

I. INTRODUCTION

   A.   Facts and Procedural History

This is a wrongful death action brought by Zhanna Chizhik, the wife and Administratrix of Grigory Chizhik's estate. Grigory Chizhik died on May 25, 2003 after the vessel in which he was a passenger capsized in outer Boston Harbor.[1] After the vessel capsized it was not recovered for examination or testing. As a result of this incident, Zhanna Chizhik, on behalf of Grigory's estate filed a lawsuit naming the manufacturer, Sea Hunt, Inc., the seller, Tropicland Marine and Tackle, Inc., and the owner, Gregory Zilberman.

Pursuant to Local Rule 16.1(D) the parties filed a Joint Statement on April 29, 2004. Contained in the Joint Statement were dates to submit expert disclosures. The plaintiff was to

---

[1] Grigory Chizhik was a passenger in a 2003 Navigator 22 manufactured by Sea Hunt, Inc., and operated by Gregory Zilberman.

submit her expert disclosures by February 7, 2005 and the defendants by March 10, 2005. On February 4, 2005, plaintiff assented to defendant Sea Hunt's Motion to Extend Deadline for Discovery and Filing Motions. Sea Hunt's motion identified expert disclosure dates of May 6, 2005, plaintiff and June 17, 2005 defendants. On April 6, 2005 plaintiff filed an Assented to Motion to Extend Deadline for Discovery and Filing Motions. This request for an extension of the deadline was premised upon plaintiff's counsel's sudden in-patient surgery and Sea Hunt's counsel's busy work and trial schedule. Overlooked by plaintiff in this motion was the extension of the disclosure of experts because plaintiff's counsel was having a hard time locating a Navigator 22 for non-destructive testing by her expert.

Beginning in January, 2005 plaintiff informed counsel for Sea Hunt that she would need a 2003 Navigator 22 for non-destructive testing. Sea Hunt's attorney informed plaintiff that Sea Hunt, Inc. may need to manufacture a replica model for viewing and inspecting at their Lexington, South Carolina facility because no dealers in the Northeast were in possession of a 2003 Navigator 22. During this period of time, plaintiff finalized a settlement with Gregory Zilberman, the operator of the 2003 Navigator 22 on the date of the incident. Plaintiff learned that Mr. Zilberman's had purchased a 2004 Navigator 22. Plaintiff was also informed that this newer model was identical to the 2003 Navigator 22 which was lost at sea. Plaintiff immediately requested that her expert be able to examine and test Mr. Zilberman's Navigator 22. Plaintiff's expert, Dr, Fisher, was finally allowed to examine and test the 2004 Navigator on April 25, 2005 at Mr. Zilberman's home.

Following the inspection, plaintiff's counsel learned that Dr. Fisher was leaving on a previously scheduled vacation and would not return until May 13, 2005. On May 6, 2005 upon learning of Dr. Fisher's vacation schedule, plaintiff filed an Assented to Motion to Extend

Deadlines to Disclose Expert Witnesses, to Conduct Expert Depositions and to Amend Scheduling Order Accordingly. As reasons for the motion, plaintiff informed the court that Dr. Fisher was leaving on vacation and would not be able to timely file his report. In addition, Sea Hunt's attorney, requested additional time in which to disclose experts. Plaintiff requested twenty eight days in which to submit her expert report.

On May 10, 2005 the court denied plaintiff's Assented to Motion to Extend Deadlines and to Amend Scheduling Order (*See* docket entry of May 10, 2005). On May 11, 2005 plaintiff filed an Emergency Motion for Reconsideration of her Assented to Motion to Extend Deadlines to Disclose Expert Witnesses, to Conduct Expert Depositions and to Amend Scheduling Order Accordingly. The Court has not yet ruled on plaintiff's Emergency Motion.

## LAW AND ARGUMENT

### A. Summary Judgment Standard

A motion for summary judgment should be granted where the record shows that "the pleadings … on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party." Fajardo Shopping Center, S.E. v. Sun Alliance Ins. Co. of Puerto Rico, Inc., 167 F.3d 1, 7 (1st Cir. 1999). A fact is "material" if it has the "potential to affect the outcome of the suit." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

The party moving for summary judgment "bears the initial burden." Michelson v. Digital Financial Services, 167 F.3d 715, 720 (1st Cir. 1999). However, once this burden has been met, "the onus is on the nonmoving party to present facts that show a genuine issue for trial." *Id.* In

order to determine whether summary judgment is correct, a court should "view all facts in the light most favorable to the nonmoving party." Villanueva v. Wellesley College, 930 F.2d 124, 127 (1st Cir. 1990). The opposing party, however, "may not rest on mere allegations or denials of his pleading...." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995). In order to resist a motion for summary judgment, the nonmoving party must produce "definite, competent evidence" on which the nonmovant bears the ultimate burden of proof. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). *See also* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1996) (summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

I.      Defendant Sea Hunt, Inc.'s Motion for Summary Judgment is Premature

Immediately upon notice from the court that the parties Assented to Motion to Extend Deadlines to Disclose Expert Witnesses, to Conduct Expert Depositions and to Amend Scheduling Order Accordingly was denied, plaintiff filed an Emergency Motion for Reconsideration pursuant to Local Rule 40.4. The court docketed this motion on May 11, 2005. Defendant filed and served an opposition to plaintiff's Emergency Motion approximately one month later on June 10, 2005 and seven days after receiving plaintiff's expert disclosure. (It appears defendant did not like plaintiff's expert report). Defendant did not serve their opposition within fourteen days as required by L.R. 7.1(B)(2) and therefore the court should not consider it in deciding plaintiff's Emergency Motion. The court has not yet ruled on plaintiff's Emergency Motion and therefore, defendant's Summary Judgment based on failure to comply with the court's order is not yet ripe. To promote judicial economy, the defendant should wait until this

court has ruled on the Emergency Motion for Reconsideration before filing for summary judgment. If the court decides not to reconsider or deny plaintiff's Emergency Motion, defendant's Summary Judgment would then be ripe and able to be served.

II.     Expert Testimony is not Required to Establish Liability in Design Defect Cases

Victor Roof the co-owner and president of Sea Hunt, Inc. appeared and testified at plaintiff's 30(B)(6) deposition as Sea Hunt's 30(b)(6) designee. At the deposition, Mr. Roof spoke about the Navigator 22 and Triton 212 both boats manufactured by Sea Hunt, Inc. Mr. Roof referred to language on a brochure for the Navigator 22 as capable of handling open coastal waters. *See* Navigator 22 Brochure attached as Exhibit 1 and Roof Deposition at 25:21-25 attached as Exhibit 2.

Mr. Roof admitted that the Triton 212 was designed with a hull depth five inches deeper than that of the Navigator 22. The Triton 212 was designed with gunwale heights of twenty five inches while the Navigator 22 was designed with twenty inch gunwale heights. Mr. Roof testified that the difference in height would be an important factor in keeping green water out of the boat in waves. Mr. Roof also admitted that there existed a greater likelihood that a boat adrift and broadside to waves (like the boat in this case) with lower gunwale heights would be more likely to experience waves over the gunwales. *See* Roof at 34 and 35, Exhibit 2. Mr. Roof went on to say that a boat with twenty inch gunwale heights would be more apt to be troubled in waves than a boat with twenty five inch gunwales. *See* Roof at 38:6-10, Exhibit 2. Mr. Roof testified that he made all decisions with regard to dimensions of the hull and hull depth of the Navigator 22 even though he is not a naval architect. *See* Roof at 33:23-25 and 34:1,2, Exhibit 2.

Mr. Roof stated that the Navigator 22 was designed and built to have the ability to do more casting or any type fishing in which you would want to cast a rod. *See* Roof at 32:8-11,

Exhibit 2. Even though Mr. Roof referred to the Navigator 22 as primarily a fishing vessel no tests were ever conducted on the stability of the boat while people were standing as you would when casting. *See* Roof at 54:18-21, Exhibit 2.

Mr. Zilberman testified that at the time of the incident, the Navigator 22 was near Outer Brewster Island in swells of three to five feet. *See* Deposition of Zilberman at 61:16-22 attached as Exhibit 3. He also stated that he had his back to the waves and all three men on the Navigator 22 were standing. *See* Zilberman at 68-70, Exhibit 3. At the time of the incident, the boat was broadside to the approaching three to five foot waves, and all three men were standing; a scenario the Navigator 22 was not tested for or designed to withstand. *See* Roof at 38:6-10 and 54:18-21, Exhibit 2.

In *Smith v. Ariens Co.*, 375 Mass. 620, 377 N.E.2d 954 (1978), the court stated that "in cases which a jury can find of their own lay knowledge that there exists a design defect which exposes its users of the product to unreasonable risk of injury, expert testimony that a product is negligently designed is not required." The twenty inch gunwale height of the Navigator 22 which is marketed as capable of handling open coastal waters can be seen as design defect within the purview of understanding of the jury without expert testimony. Mr. Roof's testimony regarding the use of the Navigator 22 as primarily a fishing boat, the height of the gunwales coupled with the Navigator 22 brochure stating that the vessel was capable of handling open coastal waters would permit a jury to find of its own knowledge that the vessel's design created a foreseeable risk that the boat would capsize in open coastal waters.

III.   Sea Hunt, Inc. Failed to Warn Gregory Zilberman of The Inadequate Capabilities of The Navigator 22 For His Intended Use

Massachusetts case law is clear that a manufacturer has no duty to warn a plaintiff who is fully aware of the risks posed by a product. *Colter v. Barber-Greene Co.*, 403 Mass. 50, 59, 525 N.E.2d 1305 (1988). Mr. Zilberman became interested in and ultimately purchased the Navigator 22 because it was marketed as capable of taking some rough water. *See* Zilberman at 30, Exhibit 3. In making his decision to purchase the Navigator 22 Mr. Zilberman read the brochure which described the vessel as capable of handling open coastal waters. *See* Brochure, Exhibit 1 and Zilberman at 30, Exhibit 3. Based on the warranties contained in the brochure, Mr. Zilberman purchased the Navigator 22. This brochure put Zilberman at ease that the Navigator 22 could and would be able to handle situations for which he was purchasing the boat, namely, for use in rough waters. *See* Zilberman at 30:22-24, Exhibit 3. Mr. Zilberman communicated these warranties to Mr. Lashgari on the date of the incident. *See* Lashgari Deposition at 23:22-24 and 24:1-14, attached as Exhibit 4. Implicit in the marketing brochure language is the lack of associated risks of operating the Navigator 22 precisely where it was on the date of Grigory Chizhik's death. Mr. Zilberman relied on the warranties made by Sea Hunt, Inc. that the Navigator 22 was safe to operate in open coastal waters as described in the brochure and was not aware of the real dangers posed by operating the Navigator 22 in rough waters. The misleading statement about the capability of the Navigator 22, which was communicated to and relied upon by all, in coastal waters coupled with a failure to warn Mr. Zilberman of the inadequate design for operation in open coastal waters resulted in this tragedy.

## CONCLUSION

For the reasons stated above, plaintiff requests this court <u>deny</u> defendant's motion for summary judgment.

## REQUEST FOR ORAL ARGUMENT

        Plaintiff,
By his attorneys,

/s/ David B. Kaplan
DAVID B. KAPLAN, BBO #254580
THE KAPLAN/BOND GROUP
88 BLACK FALCON AVENUE
SUITE 301
BOSTON, MA 02210
(617) 261-0080

Dated: September 30, 2005